**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| RUSSELL CARR, | : | MOTION TO VACATE |
| BOP No. 58208-019, | : | 28 U.S.C. § 2255 |
|     Movant, | : | |
| | : | CIVIL ACTION NO. |
|     v. | : | 1:10-CV-1802-TCB-ECS |
| | : | |
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION NO. |
|     Respondent. | : | 1:06-CR-275-TCB-ECS |

**FINAL REPORT AND RECOMMENDATION**

This matter is before the Court on Russell Carr's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody [Doc. No. 90], the government's Response [Doc. No. 97], Carr's Reply [Doc. No. 101], Carr's Motion to Supplement the Record [Doc. No. 110], the government's brief on additional issues [Doc. No. 117], and Carr's further Response [Doc. No. 121]. For the following reasons, the undersigned recommends that Carr's § 2255 motion be denied and that no certificate of appealability be issued.

**I.**
**Factual and Procedural Background**

Russell Carr was first convicted and sentenced as an adult in state court in 1990. See [90-2 at 2]. Over the next fifteen years, Carr was convicted and sentenced in state court eight more times, and arrested, but not prosecuted to conviction, an additional five times. See [id. at 2-5]. Three of Carr's

sentences were for violations of the Georgia Controlled Substances Act. See [id. at 2-4].

In 2005, Carr was arrested again, and, on June 7, 2006, he was indicted in federal court on four drugs and weapons charges. See [Doc. No. 2]. In light of Carr's criminal history, the government filed a notice stating that Carr qualified for sentencing as an "Armed Career Criminal." See [Doc. No. 57]. The government listed three predicate convictions. Id. The government later abandoned its efforts to have Carr sentenced as an "Armed Career Criminal," and instead sought to have Carr's sentence enhanced as a "Career Offender" under the sentencing guidelines.

Before his direct appeal – when the Eleventh Circuit concluded that the challenge came too late – Carr's appointed counsel failed to challenge either the government's Armed Career Criminal notice or its later contention that Carr was a Career Offender. In fact, the conditional plea that Carr ultimately entered conceded that "defendant qualifies for sentencing as a 'Career Offender' within the meaning of U.S.S.G. Section 4B1.1(a)," and Carr "agree[d] to be sentenced within the applicable advisory guideline range" which was stipulated to be no less than 262-327 months. [Doc. No. 67-1 at 3]. Carr now contends that he should never have been sentenced as a Career Offender. This contention is at the heart of his § 2255 motion.

2

During pretrial proceedings, however, the focus of litigation was on Carr's motions to suppress statements made and evidence recovered when he was searched and arrested.  See [Doc. Nos. 15, 16].  For reasons set forth in a report and recommendation to the district judge, the undersigned recommended that those motions be granted and that the evidence and statements be suppressed.  See [Doc. No. 28].  The government objected, and, after de novo review by the district judge, including several additional hearings that permitted the government to present additional evidence to bolster its case, the Honorable Timothy C. Batten, Sr., rejected the report and recommendation and denied Carr's motions to suppress, see [Doc. No. 45], and subsequent motion for reconsideration, see [Doc. Nos. 47, 58].

On the eve of trial, the government offered to dismiss three of the four charges against Carr if he would plead guilty to a firearms count under 18 U.S.C. § 924(c)(1)(A).  Carr states that his attorney recommended that he accept this plea offer and receive a 262-month sentence rather than proceed to trial where he would risk, if convicted, receiving a life sentence.  [Doc. No. 90-1 at 5].  Taking his counsel's advice, Carr entered a conditional guilty plea.  [Doc. No. 67-1].

As noted above, Carr's counsel never challenged - before appeal - the Career Offender sentencing enhancement.  Indeed, as

3

further noted above, the written plea agreement expressly acknowledged that Carr qualified for sentencing as a 'Career Offender.' [Id. at 3]. The plea agreement also stipulated that "a sentence at the bottom of the sentencing ranges . . . would be a reasonable and appropriate sentence." [Id.]. And the plea agreement included a 'Limited Waiver of Appeal,' reserving for Carr only the right to (1) appeal (a) the denial of his pretrial suppression motions and (b) a sentence above the applicable guideline range, or (2) cross-appeal if the government appealed. The plea agreement otherwise waived "[t]o the maximum extent permitted by federal law . . . [Carr's] right to appeal his conviction and sentence and the right to collaterally attack his sentence in any post-conviction proceeding on any ground, including 28 U.S.C. § 2255." [Id. at 4].

After a lengthy colloquy that included inquiry into Carr's understanding of the terms of his plea agreement, Judge Batten accepted Carr's guilty plea. [Doc. No. 78]. Carr was then sentenced to a 262-month term of imprisonment, as contemplated in the plea agreement. [Doc. No. 72].

Carr directly appealed two issues: the denial of his motions to suppress and - raising this issue for the first time - the enhancement of his sentence. Construing the facts in the light most favorable to the government and reviewing the district court's

4

findings of fact only for clear error, the United States Court of Appeals for the Eleventh Circuit affirmed the denial of Carr's motions to suppress.  Applying the limited waiver of appeal, the Eleventh Circuit also dismissed Carr's appeal of his sentence challenging the application of the Career Offender sentencing enhancement.  See [Doc. No. 88 (reported at United States v. Carr, 296 F. App'x 912 (11th Cir. 2008))].  Carr's petition to the Supreme Court for a writ of certiorari was denied.  See [Doc. No. 89 (reported at Carr v. United States, 557 U.S. 910 (2009)).].

## II.
## The Motion to Vacate, Set Aside, or Correct Sentence

Carr then filed the § 2255 motion that is now pending before the Court.  See [Doc. No. 90].  The central premise of Carr's § 2255 motion is that he is not, in fact, a Career Offender, and he makes two principal arguments.  First, Carr argues that the state controlled substance convictions used to enhance his federal sentence were constitutionally invalid.  [Doc. No. 90-1 at 16].[1] Second, Carr argues that both the government and his own attorney erred in treating him as a Career Offender under the United States Sentencing Guidelines because, "as a matter of law, Carr did not,

---

[1] Although generically labeled "Movant's Sentence Was Imposed in Violation of the Constitution or Laws of the United States," Ground Four in Carr's § 2255 motion actually advances this theory.  See [Doc. No. 90 at 9].

and does not, qualify to be sentenced as a career offender." [Id. at 6].[2]  In a summary fashion, Carr also enumerates a lengthy list of additional ways that his counsel allegedly provided ineffective assistance.  [Id. at 10-14].

**A. The Validity of the State Drug Convictions**

Carr's first argument is that one or more of the state drug convictions used to enhance his federal sentence was constitutionally invalid.  When Carr filed his § 2255 motion, he asserted that this issue was not ripe because he was in the process of challenging certain of his state convictions.  [Id. at 16].  After allowing ample time for Carr to pursue relief in state court, the undersigned directed Carr to provide "a detailed, written statement regarding any and all state habeas challenge(s) he has filed, including the court(s) and case number(s) of any such habeas case(s), and whether any such challenge(s) remain pending." [Doc. No. 109].  Carr's response indicates that he filed only one habeas challenge, and it was dismissed because it was time-barred under Georgia law.  [Doc. No. 110 at 14].  Carr's response further

---

[2]  This theory underlies Grounds One through Three in Carr's § 2255 motion, although he labels them formally as "Movant's Plea Was Entered Unknowing [sic], Involuntarily, Unknowingly and Without Advice of Competent Counsel," "Denial of Effective Assistance of Counsel During Plea Negotiations/Discussions and on Direct Appeal," and "Prosecutorial Misconduct."  See [Doc. No. 90 at 5-8].

6

indicates that he filed a Petition for Writ of Error Coram Nobis, which was denied. [Id. at 2]. There is no indication that Carr has challenged his state convictions further, or that any of them have been set aside. Thus, because Carr has not demonstrated that any of the predicate state convictions has been set aside or will be vacated, he is not entitled to relief under § 2255 on this ground.

**B. Carr's Status as Career Offender**

Carr's second argument is that the government and his attorney erred in treating him as a Career Offender under the United States Sentencing Guidelines because, "as a matter of law, Carr did not, and does not, qualify to be sentenced as a career offender." [Doc. No. 90-1 at 6]. Although Carr concedes that he meets two of the three prongs for classification as a Career Offender, see [Doc. No. 101 at 2], he argues that the probation officer's failure in the Presentence Investigation Report ("PSR") to score individually any of his state convictions – including the three convictions that the government identified as predicates for the Career Offender classification – means he does not meet the third prong of U.S.S.G. § 4B1.1(a).[3]  In Carr's view, the failure to assess "any criminal

---

[3]   U.S.S.G. §4B1.1(a) provides:

A defendant is a career offender if (1) the defendant was last least eighteen years old at the time the defendant committed the instant offense; (2) the instant offense of conviction

7

history points whatsoever" means that none of his state drug convictions could be counted as the required "two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. §4B1.1(a)(3); see also [Doc. No. 90-1 at 6].

In its initial response, the government argued that when an offender's prior convictions collectively qualify him for treatment as a Career Offender, it is unnecessary to score them individually because the offender's criminal history is by definition in Category VI. [Doc. No. 97 at 8-9]. The only authority cited by the government for this proposition, however, is the PSR itself. [Id.].

In response, Carr identified a line of authority from the Eighth Circuit that states that "'[t]o qualify as a 'prior felony' for career offender purposes, the felony must receive criminal history points under subsection (a), (b), or (c) of [§]4A1.1.'" King v. United States, 595 F.3d 844 (8th Cir. 2010) (quoting United States v. Peters, 215 F.3d 861, 862 (8th Cir. 2000)). Upon consideration of this authority and the plain language of U.S.S.G. §4B1.2(c) – which defines terms used in §4B1.1, including "'two

---

is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

8

prior felony convictions'" – the undersigned ordered Carr and the government to brief the issue of how Carr's three predicate convictions "would have been scored for criminal history purposes if the person preparing the PSR had not assumed that no score was needed because Carr . . . appeared to be a career offender." [Doc. No. 112 at 2].

The three state convictions that the government relies upon to classify Carr as a Career Offender were his August 7, 1991, June 29, 1998, and July 16, 2003, felony convictions. See [Doc. No. 57]; see also Presentence Investigation Report ("PSR") [Doc. No. 90-2 at ¶¶ 23, 26, 29]. We review, then, whether these convictions qualify Carr as a Career Offender.

The parties agree that the 2007 United States Sentencing Guidelines apply. See [Doc. No. 117 at 5; Doc. No. 121 at 2]. The parties also agree that one of Carr's three predicate convictions – his July 16, 2003, conviction identified in ¶ 29 of the PSR – would have received one criminal history point under §4A1.1 and is thus properly counted as a predicate. See [Doc. No. 117 at 11-12; Doc. No. 121 at 11]. We turn then, to Carr's other two convictions.

**(1) The August 7, 1991, Conviction**

Although the government contends that Carr's August 7, 1991, conviction would have received criminal history points, this does

9

not appear to be the case.  Per the PSR, the longest sentence Carr received on August 7, 1991, called for "5 years to serve, 90 days jail, remainder on probation." [Doc. No. 90-2 at 3].  Carr was subsequently ordered to serve an additional five months of that sentence in jail for a probation violation.  [Id.].  Thus, the total time he served in jail on the August 7, 1991, sentence was 6-1/2 months.

U.S.S.G. §4A1.2(b)(2) states that "[i]f part of the sentence of imprisonment was suspended, 'sentence of imprisonment' refers only to the portion that was not suspended."  Thus, although the government contends that Carr's August 7, 1991, sentence could be counted under §4A1.1(a), which applies to "prior sentences of imprisonment exceeding one year and one month," Carr's sentence could only have been counted under §4A1.1(b), which applies to "each prior sentence of imprisonment of at least sixty days not counted in (a)."  This distinction is critical, because under §4A1.2(e), sentences that otherwise qualify to receive criminal history points under §4A1.1(a) are counted if they were pronounced or extended within the preceding fifteen year period, but sentences that qualify to receive criminal history points under §4A1.1(b) are counted only if they were pronounced within the preceding ten years.  Because Carr's August 7, 1991, sentence occurred more than ten years before his August 1, 2005, criminal activity in this

10

case, it could not be counted under §4A1.1(b).  This state conviction, therefore, cannot be used as one of the two predicate offenses necessary to classify Carr as a Career Offender.

**(2) The June 29, 1998, Convictions**

Ultimately, whether Carr was appropriately classified as a Career Offender turns on whether the predicate offense for which he was sentenced on June 29, 1998, should have received criminal history points.  This question is made more difficult by the fact that Carr was sentenced for multiple offenses on June 29, 1998, only one of which - the controlled suvbstance offense - is a predicate offense for purposes of the Career Offender analysis. See U.S.S.G. §§4B1.1(a)(3) & 4B1.2.

The parties in this case point to conflicting lines of authority.  Carr relies on a series of cases decided in the Eighth Circuit that applies the Rule of Lenity in a manner that would favor him.  The government relies on dicta in a footnote in a 1991 Eleventh Circuit case that favors its position.

Before determining which of these two analytical approaches ought to be applied here, we review the specifics of Carr's June 29, 1998, convictions and sentences.  Per the PSR, Carr received concurrent sentences of "3 years to serve in confinement" on two counts, one of which was a predicate offense for Career Offender

11

purposes, and the other of which was not. As a general matter, a three-year sentence imposed roughly seven years before the criminal conduct that led to indictment in this case clearly qualifies to be counted under §4A1.1(a) because of its length and recency. What is unclear, however, is whether the three-year sentence should be treated as relating to the predicate offense, the non-predicate offense, or both.

As the Eighth Circuit explained recently:

> The dispute between the parties grows out of the way the guidelines assign criminal history points to groups of related prior sentences. If a defendant's prior offenses were committed on the same occasion or consolidated for trial or sentencing, they are deemed related cases under the sentencing guidelines and 'are to be treated as one sentence for purposes of §4A1.1(a), (b), and (c). Because §4A1.1 assigns criminal history points based on the length of the sentence, however, the question arises here about which sentence should be counted among several related offenses consolidated for sentencing.
>
> Section 4A1.2(a)(2) provides the grouping rule. In order to determine which subsection of § 4A1.1 a group of related prior sentences falls under, we [u]se the longest sentence of imprisonment if concurrent sentences were imposed . . . . U.S.S.G. §4A1.2(a)(2).
>
> Each of King's disputed career offender predicates was in a group of related offenses which had been sentenced together . . . . King argues that in each group, the criminal history point[s] should have properly been attributed to an offense which was not a career offender predicate. If the point[s] had been correctly assigned in each group, he argues, his [predicate] convictions . . . would not have received any [criminal history points] under § 4A1.1(a), (b), or (c). Consequently, those offenses would not

12

> trigger the career offender guideline as 'prior
> felonies' within the meaning of the guidelines.

King v. United States, 595 F.3d 844, 848-49 (8th Cir. 2010) (internal quotation marks and citations omitted). The Eighth Circuit continued: "After considerable study, we conclude that King's reading of the guidelines is plausible." Id. at 850. The Eighth Circuit then concluded that this "bring[s] the rule of lenity into play, because '[w]here there are two plausible readings of a guideline provision, we apply the rule of lenity and give the defendant the benefit of the reading that results in the shorter sentence.'" Id. at 851 (quoting United States v. Oetken, 241 F.3d 1057, 1060 (8th Cir. 2001).

The government concedes that if King applies, then the predicate offense for which Carr was sentenced on June 28, 1998 would not have received any criminal history points and would not support a determination that he is a Career Offender. See [Doc. No. 117 at 11]. The government responds, however, that the Eleventh Circuit views §4A1.2 differently from the King analysis and would not apply the rule of lenity as it was applied in King. In support of this argument, the government cites a footnote from a 1991 case, United States v. Corneq, 945 F.2d 1504, 1506-07 n. 3 (11th cir. 1991), that stated:

> Sentencing Guidelines § 4A1.2(a)(2) provides that
> prior sentences imposed in related cases are to be
> treated as one sentence for purposes of the criminal

history; in addition, the district court must use the longest sentence of imprisonment if concurrent sentences were imposed. [Appellant], citing this guideline, contends that for purposes of determining whether the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense and thus may be classified as a career offender, we may consider only the <u>conviction</u> with the longest sentence. We believe, however, that Congress intended us to consider the nature of all convictions in related cases for purposes of the career offender determination – not simply the conviction with the longest sentence. The use of the longest sentence of imprisonment logically relates to the calculation of criminal history category under Guidelines § 4A1.1., which scores the defendant a number of points based on the length of his prior sentences; in other words, if the court that sentenced the defendant thought that the sentences should be served concurrently, rather than consecutively, it would be fair only to consider the longest sentence – the district court may not "double count" sentences when a prior court judged that a "single" sentence accurately reflected the severity of the defendant's crimes.    It would be illogical, however, to ignore a conviction for a violent felony just because it happened to be coupled with a nonviolent felony conviction having a longer sentence.

<u>Id.</u> (emphasis in original)(Tjoflat, J.). But having set forth this analysis in the footnote, the Eleventh Circuit nevertheless indicated in the very next sentence that this analysis need not be applied in Cornog's case because the related offense that Cornog contended was not a qualifying predicate offense qualified, in fact, as a "crime of violence." Thus, criminal history points were assignable to a predicate offense regardless of which offense from Cornog's sentence carried the longer sentence. <u>Id.</u>

14

Even though the analysis in the <u>Cornog</u> footnote was dicta, the undersigned is persuaded that district courts in this circuit and the Eleventh Circuit itself are likely to apply the <u>Corneg</u> reasoning, rather than the Eighth Circuit's reasoning in the <u>King/Peters</u>-line of cases. And if the <u>Corneg</u> approach is applied, there is no question that Carr was appropriately determined to be a Career Offender. His June 29, 1998, sentence for a controlled substance offense and his July 16, 2003, sentence for another controlled substance offense could both have been assigned criminal history points and, together, they provided the two "countable" prior felony convictions for controlled substance offenses required to support the determination that he was a Career Offender. Under <u>Cornog</u>'s reasoning, the central premise for relief in Carr's Grounds One through Three in his § 2255 is without merit.[4]

---

[4] First, the plea agreement that Carr entered into acknowledging his Career Offender status was not defective because it "conceded" the status. Second, Carr's attorney did not provide ineffective assistance because he conceded that Carr was appropriately sentenced as a Career Offender. Third, there was no prosecutorial misconduct where the government accurately informed Carr that he was a "Career Offender." Indeed, even if Carr were not a Career Offender, it would not be "prosecutorial misconduct" for the government to take the contrary position and to seek a plea agreement in which he conceded as much, where circuit precedent presented solid support for the government's position.

Without doubt, it would have been preferable for Carr's counsel to raise the guidelines issue at sentencing so it could have been addressed therin, rather than at this post-conviction stage in the proceedings.  But, "[a]n ineffective assistance of counsel claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense."  <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003).

If the district court concurs with the undersigned in the conclusion that <u>Cornog</u> provides the analytical rule in this case, then it is not necessary to consider further Carr's claim that his lawyer provided ineffective assistance by failing to raise the guidelines argument at sentencing, because, plainly stated, Carr suffered no prejudice when he was sentenced as a Career Offender where he was appropriately classified as such.

On the other hand, however, if the district court concludes that the <u>King/Peters</u>-line of cases provides the rule for decision, then further discussion of whether Carr's counsel provided ineffective assistance is required.  Here, it is important to note that although the <u>King</u> court granted relief in a collateral proceeding, it did <u>not</u> do so on the basis that trial counsel had provided ineffective assistance of counsel by overlooking the

16

guidelines argument that King (and now Carr) are presenting. Indeed, the Eighth Circuit stated:

> We would be reluctant to conclude that King's [trial] attorney was unconstitutionally ineffective for failing to raise his guideline argument at sentencing, for "we must 'judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . . The standard is highly deferential." Ruff v. Armontrout, 77 F.3d 265, 268 (8th Cir. 1996) (quoting Strickland v. Washington, 466 U.S. 660, 690 (1984)). That we now conclude that King's argument prevails does not necessarily mean his attorney was incompetent for failing to pursue it.

King, 595 F.3d at 853. See also Pierce v. United States, 686 F.3d 529, 534 (8th Cir. 2012) ("While at least three times our court has granted some form of relief to the defendant on direct appeal, on the basis of this or a similar argument, none of our decisions have granted a defendant collateral relief on the basis of ineffective assistance of counsel for failing to spot this issue.) (emphasis in original).

Instead, the Eighth Circuit granted King collateral relief because his appellate attorney failed to argue a different issue. In King, the Court found that the appeal waiver in King's plea agreement was unenforceable on appeal because that waiver was strictly conditioned on the imposition by the district court of a sentence within a range "agreed to by the parties." The district court's rejection of the parties' agreement at the sentencing hearing meant "[t]hat waiver should not have been enforced" in

17

subsequent proceedings.  Id.  So, even in the Eighth Circuit, in a collateral proceeding, a movant in Carr's situation would not be entitled to relief, because failing to raise the guidelines argument that King's attorney failed to raise simply would not amount to ineffective assistance of counsel.  The undersigned concludes that Carr's attorney's similar failure to raise the guidelines argument Carr now proffers did not violate the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), and reiterated in the many ineffective assistance of counsel decisions that have followed in its wake.

**(3) Additional Ineffective Assistance Arguments**

Mr. Carr also a handful of additional ineffective assistance of counsel arguments, namely that his counsel was ineffective by: (1) "failing to investigate the facts and further by failing to secure available evidence from State Court counsel for submission at the federal suppression hearing"; (2) "failing to allow Movant to testify at the Suppression Hearing when he clearly expressed a desire to so testify"; (3) "failing to investigate" the case more generally; (4) "failing to investigate and to move for a downward departure;" and (5) "failing to move to withdraw the guilty plea." [Doc. No. 90-1 at 10-14].

The problem with each of these arguments – at least as Carr has presented them – is that they are wholly conclusory and are

18

unsupported by any specific factual allegations that might illustrate why there is a reasonable probability that the outcome of Carr's case would have been different had his attorney acted in the manner Carr, with the benefit of hindsight, says he should have.  The absence of any specific factual allegations is particularly remarkable in view of the fact that Carr's pleadings in this § 2255 case total some 118 pages. See [Doc. Nos. 90, 90-1, 90-2, 91, 91-1, 101, 110, 121].

As a result (and even assuming, for the sake of discussion, that Carr's attorney acted in an objectively unreasonable manner), Carr has not given this Court any factual basis for concluding that he was prejudiced by his attorney's (in)action.  For example, although Carr says "Movant in this case asserts that he would have testified to facts that would have subjected the government's case to adversarial testing, and further would have rebutted the government's evidence," he provides no detail – absolutely none – regarding what those facts might be.  See [Doc. No. 90-1 at 12]. For a second example, Carr contends that his attorney was ineffective because he failed to seek a downward departure at sentencing. [Doc. No. 90-1 at 13-24].  It is not enough, however, that Carr identified case law that indicates downward departures may be granted where the Career Offender sentencing enhancement applies, see, e.g., United States v. Webb, 139 F.3d 1390, 1395

19

(11th Cir. 1998), he must identify the reasons <u>why</u> he would be entitled to such a departure in this case. Again, Carr fails to specify anywhere in his 118 pages of pleadings any specific facts that might have supported a downward departure in his case.

Carr's omission of specific facts in support of his collateral claims is fatal to them.

> The § 2254 Rules and the § 2255 Rules mandate "fact pleading" as opposed to "notice pleading" . . . . The reason for the heightened pleading requirement - fact pleading - is obvious. . . . [T]he habeas petitioner ordinarily possesses, or has access to, the evidence necessary to establish the facts supporting his collateral claim . . . . [T]he petitioner is, or should be, aware of the evidence to support the claim before bringing his petition.

<u>Borden v. Allen</u>, 646 F.3d 785, 810 (11th Cir. 2011). Section 2255 motions (or portions thereof) that fail to comply with those fact pleading requirements are subject to summary dismissal. <u>See</u> 28 U.S.C. fol. § 2255, Rule 4; <u>see also</u> <u>Borden</u>, 646 F.3d at 810 n.32.

Carr's miscellaneous arguments to the effect that his counsel provided ineffective assistance are unsupported by any facts that suggest - let alone demonstrate - that he is entitled to habeas relief on this ground. Summary dismissal is therefore appropriate.

The undersigned therefore **RECOMMENDS** that Carr's § 2255 motion be **DENIED**.

### III.

**Appealability**

In a § 2255 proceeding, this Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." 28 U.S.C. fol. § 2255, Rule 11(a). A § 2255 movant "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, a § 2255 movant must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003) (citations and quotation marks omitted).

Although it is debatable whether courts in this circuit should apply the reasoning of the <u>Cornog</u> footnote, or the <u>King/Peters</u>-line of cases, it is not debatable, even under the <u>King/Peters</u>-line, that the failure of trial counsel to raise this guidelines argument Carr does not amount to ineffective assistance of counsel. Carr's other arguments are even more clearly foreclosed by precedent. The

undersigned    therefore    **RECOMMENDS**    that    a    Certificate    of
Appealability be **DENIED** in this case.

The Clerk is **DIRECTED** to terminate the referral of this case
to the undersigned.

**SO RECOMMENDED AND DIRECTED**, this 3rd day of July, 2013.


*S/ E. Clayton Scofield III*
E. CLAYTON SCOFIELD III
UNITED STATES MAGISTRATE JUDGE

22